I'm Janet Krebs, here on behalf of the appellant physicians. As the Court noted, I would like to reserve some time for rebuttal, if possible. Pima County intends to take two minutes of the 25 minutes that have been allotted. Excuse me, counsel. I may not remember the complaint accurately, so I'm asking for some education here. I do not recall any of the doctors pleading that they had a patient who wanted or had ever had a patient who wanted an abortion during that 20 to 24-week period that's at issue. Is that correct? No, Your Honor. There is – that evidence is in the record. Is it in the complaint? That's what I asked. I believe that it is in the complaint. I am positive that it is in the declarations that we submitted in support of our motion for preliminary injunction. Do you remember where? In, for example, both the declaration of Dr. Isaacson and Dr. Kluhl's initial declaration, specifically Dr. Isaacson states that he performs approximately 50 abortions a year that are post-20-week and pre-viability. So in Dr. Isaacson's practice, that means about one woman a week is seeking abortions that would be prohibited by the law? The complaint says that Dr. Isaacson regularly provides abortions before fetal viability and at and after 20 weeks' gestational age. Kluhl well says something similar in the complaint. Thank you, Your Honor. And among those women, as Dr. Isaacson describes his practice in his declaration, he estimates that approximately 70 percent of those women are seeking abortions due to a diagnosis of fetal, some kind of fetal condition. The remaining women, some are seeking abortions due to health concerns, and others are seeking abortions for other reasons. The State of Arizona Let me ask you something about the statute. As I read the statute, a non-obvious, and I'm sure contrary to what the legislature had in mind, interpretation occurred to me. However, I noticed that in the Obamacare decision, the Supreme Court chose a non-obvious interpretation contrary to what was intended by the President and Congress in order to save the statute. So I'm thinking they might want to do the same thing here. And when I looked at medical emergency in subsection 2, it says a condition and so forth to avoid the woman's death or for which a delay will create serious risk of substantial and irreversible impairment of a major bodily function. Now my guess is that the legislature really meant to say major bodily function of the woman, but they didn't say that. And what I was wondering was whether the statute could be saved by saying or for which a delay will create a serious risk of substantial and irreversible impairment of a major bodily function in anyone, which means one of these fetuses that would be born with these horrible birth defects. Sometimes you can't discover a birth defect until 20 weeks, and sometimes the fetus will be born with a horrible birth defect, which means it's born into hell, gets several months or years of operations and pain, and then dies as a baby. If it could be read to mean substantial and irreversible impairment of a major bodily function of anyone, then it would permit those abortions, and I wonder whether it would also be permissible under current Supreme Court law, under Gonzales. Your Honor, it would not. The quote I think that is critical, excuse me, from the Supreme Court's decision, and I believe this quote appears in both Casey and in Gonzales, is that regardless of whether exceptions are made, the State may not prohibit any woman from making the ultimate decision to terminate her pregnancy prior to viability. And they describe this rule as the central tenet of the abortion jurisprudence. I recall two adjectives there that made it less than that absolute. I'm trying to find my adjectives. I don't think they said absolutely no restrictions before viability, which is the way you phrased it. Oh, no, Your Honor. I did not intend for you to hear me saying that the State cannot restrict or regulate abortion prior to viability. What it cannot do, which is what the State is attempting to do here, is directly prohibit abortions prior to viability. The State retains authority to regulate abortion prior to viability, but it cannot, through those regulations, strike at the heart of the right, and it cannot impose an undue burden on women seeking abortions. So just to go back to your question regarding whether the medical emergency exception could be interpreted in a way that would save the Act, the answer is no for two reasons. One, the Act cannot be saved if it directly prohibits abortions, regardless of what exceptions it made. And, two, even under your very broad interpretation, there would still be women for whom the Act would be an absolute ban, and that is established in the record by Dr. Isakson's declaration, which outlines the majority of this. It would not be a ban where there were these severe birth defects. It would be a ban where the only reason for the late abortion is that the woman had changed her mind. Would that be an undue burden under Casey and prohibited under Casey and Gonzales? Yes, Your Honor, but there are two parts to that answer. First, because this is an Act – the Act directly prohibits abortion for any woman prior to viability, it is per se unconstitutional, and it is not judged under the undue burden standard. But, secondly, because the undue burden standard has to do with the legitimacy of a regulation which might essentially put an obstacle in the way of an abortion, but it wouldn't forbid the abortion if the obstacle was – the obstacle being a procedural or a location or a type of abortion, as in Gonzales, but in the end, if you jump through the hoops, you get the abortion. And the problem here is that that's not true. That's right. And the Supreme Court has been clear in describing the difference between what it considers to be a ban and a permissible regulation. And it describes a permissible regulation as one that creates a structural mechanism by which the State can express its interests, but which does not create an undue burden. By contrast, the Supreme Court has been very, very clear that the State cannot prohibit any individual woman from obtaining an abortion prior to viability. And that rule goes throughout the period of time of pregnancy, up to the point of viability, regardless of when within that time the woman seeks an abortion, and regardless of what her reasons are. And in setting the viability line, the Supreme Court was trying to bring certainty to this area of the law. In fact, the opening line of the Casey decision – The Supreme Court found that the viability line, which it recognized and reaffirmed in Casey in the face of very strong opposition, that the viability line was the most workable line. Because essentially, it may not – you can't peg it to any particular date, but it's essentially medically determinable, is what they're saying. That's right. It's a – Although it may move. It may move, but it's a decision appropriate for the physician to make in each case and a well-reasoned line because it recognizes that the woman's liberty interest prevails up until the point when the fetus can independently survive. Does the – is there anything to indicate why the 20-week date was chosen here? The State attempts to justify the 20-week line on the basis of fetal pain and increased risks to maternal health, but neither of those interests are particularly pegged to the 20 weeks, and neither of those interests are sufficient to overcome a woman's liberty interest prior to viability. Can I ask a procedural question about this case? I gather that the district court, after the hearing and the preliminary injunction, treated it as a permanent injunction and decided the case in the merits and decided what he called facts. And I understand that your position is that the facts don't matter anyway at this point because the Supreme Court law is perfectly clear. But was there any indication before he – before that happened that he was going to change, that there was not to be another shot at the facts if he thought the facts mattered? No, Your Honor. The first notification that the parties received that the court was entering – was combining the preliminary injunction with the trial on the merits was in the order that was issued by the district court, indicating that judgment would be entered for the defendants. But again, the only relevant fact here is that the Act will prohibit some women from obtaining abortions prior to viability. There's no dispute in the record that at 20 weeks, as defined in the Act, no fetus is viable. And so although we don't concede the facts that were found by the district court, they're not material to the court's decision in this case. And for that reason, we are not seeking a remand. And in fact, the district court's weighing of these facts is part of its fundamental purpose. But the question isn't whether we remand. We certainly have a preliminary injunction in front of us. The question is whether we ought to be deciding this as if it's a preliminary injunction or as if it's a permanent injunction. I think under the posture of this case, it's appropriate to decide it as a permanent injunction based on final judgment being entered in this case. Kennedy, you're saying even if the judge was acting in error in granting a permanent injunction and a final judgment, you nevertheless think we should decide on the permanent injunction and the final judgment? Yes, Your Honor, because the relevant fact is undisputed, which is that the Act will ban some abortions prior to viability, and then it becomes a question of law. Your Honor, it is the preliminary injunction. We have an abuse of discretion standard of review. The permanent injunction, we do not grant the judge discretion in determining the probability of success on the merits, and there could be some factual development between the preliminary and the permanent injunction. You're saying the facts don't matter, but I'm not sure of that. Your Honor, I'm saying two things. The fact that matters is not in dispute, and that is that the Act bans abortions prior to viability. The reason why it's inappropriate to even consider the other findings of fact made by the district court are that when you are dealing with a ban on abortion prior to viability, it is per se unconstitutional, and it's per se unconstitutional because the Supreme Court has already done the weighing. They have looked at the State's interest and they have looked at the woman's liberty interest and decided that up until the point of viability, it's the woman's interest that prevails. And whether the State asserts the same interest that the Supreme Court has explicitly ruled on, which is the State's asserted interest in potential life, or whether it looks at newly framed interest, doesn't matter. In reaffirming the viability line in Casey, which was not disturbed in any way in Gonzales, the Supreme Court has indicated to the lower courts that they should not be reweighing the interest in the context of a case like this, which is an absolute ban, a direct prohibition on abortion. Now, if we were dealing with a regulation, which we are not, then the State's asserted interest come into play. But even in that situation, the regulation still has to pass the undue burden standard, which is that it cannot create a substantial obstacle to women seeking abortions. So I don't think that there are, and in fact would go so far as to say it would be inappropriate, it was inappropriate for the district court to get to those facts in the face of an act that directly prohibits abortions prior to viability. To allow those facts to weigh into the decision would in some ways be signaling some kind of thought that the Supreme Court may be backing away from the viability line, which, as the Casey court made clear, it is not. It's not our problem. I mean, maybe it will, but it's not our problem at this point. Well, yes, in the sense that this Court, first of all, cannot fairly read Gonzales as suggesting that the Court is moving away from the viability line, given that the prior to viability and recognize that principle as an essential component of Roe and Casey, and assumed its application for purposes of Gonzales. And there's lots of law that says that even if we, whatever we think the Supreme Court may do, we have to follow the Supreme, what last thing the Supreme Court said. That's right. And both the Supreme Court and this Court have been very clear that the lower courts should not act in anticipation of where the Supreme Court might go, but rather must wait for the Supreme Court to overrule itself. But again, there's no indication in the Gonzales case that the Supreme Court has signaled that it intends to overrule itself or that it has in any way undermined the viability line. Again, the Supreme Court in Casey was attempting to ensure that the viability line was there for some certainty in the law. Its opening line was that liberty finds no refuge in a jurisprudence of doubt. The Court went on to identify the protection for women to obtain abortions prior to viability as the central tenet of its abortion jurisprudence. It's sort of hard to say that that eliminates a jurisprudence of doubt, since the jurisprudence of doubt is not a whole lot more than a guess, and the judgment about whether the fetus is viable is often not much more than a guess. You're talking about a very narrow window of time here. If the legislature thought fetuses are viable at 23 weeks, and the medical evidence seems to say 23 or 24 weeks from conception, and you don't know exactly when conception occurred, 20 weeks could be just making sure you're on the right side of the line. Your Honor, abortion cases represent a confluence, if you will, of women's liberty interests that are inextricably tied to the practice of medicine. The Supreme Court is aware of this and has nonetheless established a framework that allows the physicians to practice medicine and the women to assert their liberty interests. And the other thing that there's an agreement by whatever facts are in the record here on both sides is that viability is determinable. Not only that it's not less than 24 weeks, but it's generally determinable. That's right, Your Honor. And the Supreme Court, and in fact this Court recently in the McCormick case, has recognized that the law requires the legislature to leave that determination to physicians on a case-by-case basis. In both Danforth and Cullaty, the Supreme Court has said that it would be inappropriate for the State to set a line based on a number of weeks and say, before this, a fetus is not viable, and after it is. And going specifically to your question, Judge Kleinfeld, the Supreme Court in Cullaty said it has recognized no ability in the States to move that line to a point when the fetus may be viable. Viability is the line, and that is what the courts and the State of Arizona is required to respect. I take it that you litigate these kinds of issues on a national basis? Yes, Your Honor. Your organization. Are you aware of any other States that have passed or are considering legislation similar to this? There are a number of States who have passed and are considering such legislation. For example, in the McCormick case that I just mentioned, the plaintiff there had raised a challenge to a similar 20-week ban, similar in some respects in Idaho. However, the court found that that plaintiff had no standing and did not reach the merits. I believe this is the first case challenging a ban like this, a 20-week ban that clearly prohibits some pre-viability abortions. Wasn't there an old case, an older case in the 90s? Yes. This is the first case in what I would call the recently, recent vintage cases. But the Jane L. case from the Tenth Circuit, which was a case out of Utah, is very similar on the facts in that the court there was looking at a ban at 22 weeks in a law that contained more exceptions, certainly, than the very narrow medical emergency exception that is included in the Act. And there the court, for the exact same reason that the Act is unconstitutional, struck it down, and that was because it denied women pre-viability abortions that the Supreme Court has clearly said is beyond the authority of the government to do. It's a government intrusion into a woman's autonomy that is simply not acceptable. Do you want to reserve any time? I would, Your Honor. Thank you very much. Could you let us know how you intend to find your time? Yes, Your Honor. I'll probably take 20 minutes, and then the balance of that will be for the Solicitor General of Arizona, Mr. David Cole. Okay. Which is 5 minutes. Yes, Your Honor. Yes. Your Honors, may it please the Court. I'm William Montgomery. I'm the Maricopa County attorney in Appley, in this one of the Appleys in this matter. In this argument, I would like to make five points in support of Arizona's regulation of abortions after 20 weeks of pregnancy, and that it does not strike at the heart of the abortion right and is constitutional for these following five points. Number one, new medical evidence affirms Roe's original assumption that abortions in the first trimester are safer than abortions later in pregnancy. Why? It seems to me you have to begin to be useful to us with the main argument, in fact, the only argument that I understand is being made by your opponents, which is that this is just stare decisis, the Supreme Court is absolutely clear, nothing else matters. Can we start there? Sure. Well, it overreads Casey ignores the holding within Gonzales, which started off with acknowledging that a partial birth abortion ban was a regulation. Hold on. I think we're going down a byway here. Let's assume for purposes of discussion that after 20 weeks an abortion is considerably more dangerous for a woman, and let's assume for purposes of discussion that at 20 weeks the fetus can feel excruciating pain. Nevertheless, why don't you lose under this language in Gonzales before viability a state may not prohibit any woman from making the ultimate decision to terminate her pregnancy, it also may not impose on this right an undue burden which exists if the regulation's purpose or effect is to place a substantial obstacle in the path of a woman seeking an abortion before the fetus attains viability. Now, if I read that language, assuming the fetus that you've got a woman deciding to have an abortion previability, but very shortly before viability, it seems to me I can read that language, assume that she's saying I know it's a lot riskier for me and I want to take that risk, and I know that it will cause excruciating pain for the fetus and I choose to cause the fetus to suffer that pain. Why doesn't this language in Gonzales mean she can make that choice? Because I think when we go back over the 40 years' worth of Supreme Court abortion jurisprudence and the new medical evidence that we have here that the Arizona legislature considers. New medical evidence is about the risk to the woman and the pain to the fetus, and I wanted to assume that for purposes of discussion so you wouldn't have to argue it. I know you've got evidence to that effect. It's still a problem for me to understand how you can do that. Judge Kleinfeld, I think the reason why it doesn't get read that particular way in these circumstances with these facts is because in both Gonzales and going back to Casey, the predominant interest that the state was asserting in those cases had to deal with fetal life alone. And so the liberty interest of the mother was given a heightened area of concern, a heightened emphasis, and the lines that were drawn by the court, the discussion of viability had to deal with a contest between asserted state interest in fetal life and the liberty interest of the mother. In our case here, though, we have a confluence of all three of interests that the state has that's been recognized, going back to Roe itself, in protecting the health and welfare of the mother, regulating in an area involving public health. And it seems to me that Roe, Casey, and Gonzales decided to sacrifice some of those interests, such as protection of a fetus from pain and protection of a woman from decisions that might be medically unwise, to sacrifice those interests in the interest of letting the woman have an abortion up to viability. Well, Judge Kleinfeld, I think if we were going to say that there was a sacrifice, it was done in a vacuum without the additional information that we have. Well, that may be. What information is there besides the fetal pain and the increasing risk to the woman, hemorrhage mainly? And I would say that that is incredibly important information that was not under consideration in either Casey or in Gonzales. And did those cases say, and if the facts are otherwise, it might be otherwise? No. Well, but Judge Schroeder, I would say is that even in case of the case of Roe, I think what we've got to look at there is that even in Casey, when they were discussing the different facts and the different interests at hand, the Court mentioned that we have seen how time has overtaken some of Roe's factual assumptions. And therefore, we are going to cut the line at viability. Four, where it marks the earliest point at which the State's interest in fetal life, fetal life, in Casey, looking at the interest in fetal life and to regulate the medical profession in Gonzales. So we understand your position. I mean, your position is that even though they said that, if the facts were different, that we are at liberty to change what the Supreme Court said. That's basically what you're saying. And so what I'm saying, in as explicit a way as I can, is that with this new medical evidence, we have a control system. I understand the part about fetal pain, and there's a dispute about what exactly that means. But to take the – but that still has to do with the fetal interest. In terms of the woman's interest, I mean, all I see is this obvious tautology, which is that the later you have the abortion, the more danger there is, which the Supreme Court perfectly well understood in its cases, and as anybody would understand it. But beyond that, there is – what else is there in terms of either a finding or facts or anything else? There's some speculation about at some point – as I recall, your defendant's expert essentially said that. And he didn't say – he said at some point, the two may be – childbirth and abortion may be just as dangerous. And ordinarily, one gives people the right to make medical decisions, including the risk of their own – to themselves, as long as they're told what the risks are. So how does that change anything? Well, it doesn't as long as what we're talking about is the decision that the Arizona legislature could make in this particular area, which Gonzales instructed courts to be deferred to, and that – And what did they say? They said that it was more dangerous to have an abortion than to have childbirth? The information that was available to the Arizona legislature in the studies that were cited in the record and in the legislative findings is that. It gets more dangerous as time goes on? It gets more dangerous as time goes on. Right. And in particular, in a Finland study that was referenced – I don't even see why that matters, frankly. I mean, people decide to have dangerous, even foolishly dangerous, medical procedures done on themselves all the time. Sometimes they have to shop around for a doctor because it's such a stupid idea, but they still have the right to do it. And they do it. People get so much unnecessary surgery that's dangerous. And, Judge Kleinfeld, that's true. And in this particular context, though, there is no right to an unsafe abortion. And if the State – Justice Harris? It was. And that's my problem. Frankly, I thought – I think your intuition that the law may be evolving and that it may be a little different if it bounces up to the Supreme Court again, there might be something to that. But right now, I just look at that Gonzales language and it looks as though this woman could go into the doctor and he could say, this is idiotic, you've got a 50-50 chance of dying on the table from a hemorrhage. And she could say, I want to go ahead with it, and he'd say, well, okay. And in that particular instance, Judge Kleinfeld, she would fall within the medical emergency exception as held constitutional and as discussed in the other – But Judge Kleinfeld has a different hypothetical than the one you're – My hypo was, if you go ahead with this, you've got a 50-50 chance of dying on the table. If you don't go ahead with this, you will have an untroubled childbirth in all likelihood. I think she could still go ahead with it. Before 20 weeks, yes. Before 20 weeks, a woman can make a choice in a healthy pregnancy to terminate it at that point. But the proposition is that the Supreme Court has decided that in that hypothetical, the woman can go ahead with it. And I disagree with that holding applying to these facts and where this case is. Tell me something else. Is there a justification for not reaching the merits in this case, whether standing or rightness or facial challenge as opposed to as-applied challenge? All those things have kind of been barking around the outside of the lot here. And I think when you try to get to an assessment about whether or not the plaintiff's would be likely to succeed in a trial on the merits, I think that's when we get to the point of looking at – No, no. That's not what I meant. What I meant was, is there a proper and legitimate way for us to dispose of the appeal that's before us on grounds of lack of standing or lack of rightness or that a facial challenge is inappropriate and it should be an as-applied challenge instead? Is there any way that this panel should avoid reaching the merits? I think that this Court could, in a de novo review, say that there are not enough  But I would say that the appropriate challenge here would be an as-applied challenge instead of a facial challenge. Why would that be so? I saw it in the briefs and I didn't really understand it. Well, it's because if the Court were going to consider undue burden in a large fraction analysis, we're missing the numerator and the denominator. We don't know because no actual patient has been presented to any court yet a situation in which a doctor would have a concern about the health and welfare of his patient who would not fall within the merits. We do have a record on that. We have the – I mean, the problem – are you – you said trial on the merits. So my understanding is there's been a trial on the merits. The district court said that this is a permanent injunction and a final judgment and nobody's complaining about it. And, Judge Burson, I misunderstood Judge Kleinfeld's question, so that's why I started to answer it that way. But what I would say here is that – But it has to do with what you're saying now. I mean, in other words, there is a record. The record is that the doctor – the plaintiff doctors have patients with these problems. They've described them in great detail. They have said what the kinds of issues are that give rise to these problems. They've described individuals and said in what circumstances the problems have arisen. So what's the problem? Well, Judge Burson, the problem is that that information was before the legislature when they weighed everything and saw that even in the field of medical uncertainty – No, but we're not talking about the standing as applied, et cetera, issues. Well, I would look at it in this way, then, going back to McCormick, where the patient in that instance asserting problems with a statute that would have affected doctors said that, you know, we don't have everybody in front of us here and you can't raise that. I would argue that where you only have one-half of that equation here still before this Court – What one-half? I don't understand. You have the physicians in front of you, and sure, they filed their affidavits. But practical matter, how would you ever do this? I mean, you have people who – it's now 21 weeks, and at the 23 weeks, they're not going to be able to have an abortion anyway because it's a viability issue, and they're going to go running into court and have a whole hearing at that point with when we know that there are such people and when we know the statute is not only that, quite aside from anybody's individual problems, the argument on the other side is that the statute allows the choice even if there is no problem. Well, I would say that the as-applied challenge would be the best way to go. It was identified as the best way to challenge any problems with a partial birth abortion ban in Gonzales, and it would still be appropriate here. If you had a patient in a certain sense – If you have a woman, as I understand the proposition on the other side and the way Casey and Gonzales seem to read it as this, if it's the 21st week after conception and I want to have an abortion, I can have an abortion, period, the end. What kind of facts do you need? Well, in that particular instance, under this regulation, I would say in order for someone to want to elect a non-therapeutic abortion after 20 weeks, this law would prohibit it. That's right, it would. But the argument on the other side is that's unconstitutional. We can't do it. So what do we need any facts for? Well, so what I would say is that that argument for a per se ban is incorrect. Gonzales is the proof of that. It banned abortions both post and pre-viability. Only – it didn't ban abortions. It didn't ban the abortion. It said basically you have to take the kid apart in the uterus. Before you pull the pieces out, you can't get the kid partially born and stick scissors in his skull. And that's the importance of the new medical evidence that we have here that was not considered in Gonzales. And part of the Court's concern there in supporting Congress's finding that they wanted to ban it. Right. But there is a clear distinction between you can only do it this way and you can't do it at all. So what is your answer to why that's not the distinction that makes all the difference in this case? Because in Gonzales, there was no medical exception. So the fact that there were other available procedures was the back of the saying that this was not a ban. And that's where they said, well, it doesn't look to us like that's a problem, but if anybody in particular has a problem, we'll worry about it then. I think this Court could say the same thing today. I can't see where Gonzales gave you anything for the previability, and maybe I'm just not understanding fully, where it gave you anything except Gonzales said do it this way, don't do it that way. Well, and again, I think a couple of the other points that ---- I mean, Gonzales said you can't have the kid partially born. You have to kill the kid in the uterus. But it allowed killing the kid in the uterus. Well, I think it would be exceedingly problematic for the Court to read Casey and Gonzales together that would undermine the recognition, even in Roe, that the State had a compelling interest in the health and welfare of the mother at the end of the first trimester. But does Arizona have any similar statutes with regard to, say, cosmetic surgery, saying that you can't have cosmetic surgery because it's dangerous? Not at this point. But I think given the legislature's ---- Or anything else? Anything else at all with regard to protecting the patient from, you know, not unreasonable risks, not like people are dying every day from this. In fact, I looked at the Arizona statutes. It looks like nobody's died in Arizona for the last as many years as the records go back. I don't think we have any other procedure like abortion where doctors would be willing to go forward and perform it in light of this known risk. Isn't the whole ---- Well, what is the known risk? Does anybody die in Arizona from an abortion in many years? They do prostatectomies all the time that they know will cause impotence and incontinence. And they know that there's a very high probability that if they didn't do the prostatectomy, the patient would be just fine and would eventually die of something else other than the prostate cancer. They do it every day. It's very frequent. Well, and here's where this particular circumstance in drawing a line at 20 weeks is different, because we also have a confluence of not just the interest in the health and welfare of the mother, but also in interest in fetal life and also in the health of the mother. Well, now you're switching gears. But in terms of the ---- you're saying what's different here, though, is the health of the mother issue, and it's ---- and that, aside from the fact that the Supreme Court seems pretty clear, just seems like a red herring in terms of a privacy interest because ---- or autonomy interest, because in general, people get to make those risks, especially when they're at the level of this risk, which is not much. Well, it's an exponentially increased risk from early in the pregnancy. Of course that's true. And so it seems to be now the same as childbirth, and people can choose which one they want. No, Your Honor. It's greater than at childbirth. In fact, in the Finland study that was referenced by the legislature, there was a difference between a mortality of 27 births per 100,000 ---- 27 deaths per 100,000 for women who had given birth, and 101 per 100,000. And I thought that included illegal abortions in Africa. No. With no ---- No, Your Honor. This was a Finland study. I know it was a Finland study, but it wasn't about Finland, was it? Well, the study itself, I ---- whatever it was based on is in the record. Okay. Isn't what you're arguing, though, in terms of the effect on the mother and the risk, isn't that the concern that the Supreme Court was trying to take care of in Casey when it emphasized that regulation could include requiring that the woman have full information? Isn't that where this risk is taken care of? Judge Schroeder, I think that's the beginning of it. And when the Court was trying to balance a State's interest in the health and welfare of the mother in those cases, it looked to regulations at first involved with informed consent, a 24-hour waiting period to consider that information. In this particular instance, I would say that with that new medical evidence, what we've got is now a justification for the State to draw the line at 20 weeks and to say, well, not just informed consent here, but there is an exponential increase to the risk of a woman. If you're going to make that decision, make it in consultation with your doctor, but do it before 20 weeks when it's so much safer. And I don't think that that's inconsistent. But there was a fair amount of explanation in the record about why in some instances that doesn't work. You only have about a minute and a half left, just so you know. Okay. Thank you. But what I would say here is that the bottom line point being that with the arc of the Supreme Court's jurisprudence in this area, in reading Casey and Gonzales together, not to undermine any of the interests that were first recognized in Roe about the State's interest in maternal health and well-being, drawing the line at 20 weeks where the State had the information to rely on, and under Gonzales that decision is due deference by the courts, coupled now with additional medical evidence about fetal pain, coupled with the analysis in Gonzales, if the court was willing to defer to Congress on the impact to the medical profession at participating in a partial birth abortion ban procedure, that concern is equally represented in Arizona drawing a line at 20 weeks where these interests, the compelling interest in the health and welfare of the mother, and then the interest in fetal life and the interest in wanting to maintain the integrity and ethics of the medical profession, come together better at that point than any other efforts courts have had in trying to draw a line and justify it otherwise. We have information that the legislature was authorized to consider in drawing this line, and the regulation, I believe in light of all of these cases, permits Arizona to regulate abortions after 20 weeks as it had. Okay. Thank you very much. Good morning. Hi. May it please the Court, I'm Dave Cole, Arizona Solicitor General. I represent Tom Horne, who is the Arizona Attorney General, and the other State defendants. I considered a privilege to appear in this Court and argue on behalf of a regulatory scheme that is intended to protect women and unborn children. Do you have any evidence that you can give to support this? Your Honor, I have nothing to say in addition to what Mr. Montgomery said.  Now, as far as your other argument goes about the possibility of abortion, I think it's a very helpful way to address that language. I quoted to your colleague from Gonzales, it looks to me as though the Supreme Court has told us before viability, it doesn't matter how dangerous it is to the woman and how painful it is for the fetus being killed, the woman has a right to get it aborted. Your Honor, I have nothing to say in addition to what Mr. Montgomery said. That's the same argument that I would make. Now, as far as your other argument goes about the pain and the danger, what those are, it seems to me, are good reasons to get an abortion earlier. Absolutely. However, it strikes me there can be good reasons to get an abortion later. The one that occurs to me is the one I hypothesized to your colleague. I think there's something called DiGiorgio's Syndrome or something like that. It's a birth defect. You can't discover it until after 20 weeks. The child will be born in extremely defective condition. He'll have one operation after another and then will die as a young child in all likelihood, basically born into hell and then die. Why a woman might decide it's worth the pain to the fetus and it's worth the risk to the woman to kill it before it's born and also before it's viable. So it seems at that point you've got just a balancing and I don't see why the danger to the woman and the pain to the fetus compel a constitutional decision balancing it on one side rather than the other in light of the Gonzales language. What I would say in response to that, Your Honor, is that we need then to wait for an as-applied challenge. This is clearly a facial challenge to the statute. Well, it's not a facial challenge because it's only a challenge to the pre-viability and not the post-viability application. But even aside from that, if the rule is that you cannot prevent a woman no matter why, even if there is no reason from doing a pre-viability abortion, then what are we waiting for? I don't think we can cast aside the findings of legislature that easily, Your Honor. Well, why? Why, if that's the rule? If that's the rule, then the findings don't matter. And then there is nothing, no set of facts or developments or particularized situations are going to make a lot of difference. As long as there are such abortions, which we know there are, and as long as everybody agrees that there is no viability at 20 weeks, and as long as everybody seems to agree that viability is ascertainable, what's the problem? I'm not sure that it's ascertainable to that degree, Your Honor. I think there were questions. Is anybody claiming that there is viability at 20 weeks? I'm sorry, ma'am. Are you contending that there is viability at 20 weeks ever? No. No. So. How would you do an as-applied challenge? I'm thinking a woman goes to the doctor, it's week 21, and in the ultrasound they discover one of these horrible birth defect syndromes. She says, oh, my gosh, you know, after talking about it with my husband and with you, doctor, we've decided we want to terminate this pregnancy. How does she do it? I mean, I don't see how the courts could act before viability in that case. Well, I understand that it would be a difficult situation. But the fact of the matter is that's, with due respect, that's the woman's problem. She should make the decision at an earlier time. And that's one of the things that's said. But the hypothesis is that she couldn't have or there was no reason to. Well, I can only look back at the record. And the district court in this case found, based on one of the affidavits, that it is truly rare that a woman loses the opportunity to abort because she's past 20 weeks' gestation. And what was he looking at? He was looking at some affidavits on both sides after not having a trial, after and telling people after the whole thing was over that he's now going to just decide the case on a completely truncated record. I think parties walk into court knowing that that could happen. Oh, it had happened. Rare things happen to individuals. I mean, getting struck by lightning is rare. But you can count on some people being struck by lightning every year. Rare events just means the probability of it happening to you in particular is low. It doesn't mean that the probability of its occurrence is low. I notice that my time is up. May I respond to that last question? Yes, your time is up. Yes, please answer that. Answer the question. I simply want to say that the state legislature has the authority under our law to make findings. In this case, they've made detailed findings. The findings are amply supported by medical fact. The findings are not to be cast aside as though they were some sort of afterthought. But I think that the legislature has the authority to do this. I understand that it's a difficult area, and I understand that there's lots of uncertainty, medically and otherwise. But the legislature balanced those things and did what it did. And we're asking the Court to uphold. Okay. Thank you very much, Mr. Pereira. Thank you. My understanding is you're going to talk for two minutes, right? I'm probably going to speak for less than that. First, I'd like to say good morning and thank you for providing me the opportunity to address this Court. I appreciate it. The only point that I would like to make is that there are three prosecuting attorneys or state prosecutors named as defendants in this litigation. The pleadings filed by my co-defendants indicate that they represent the interests of this State. However, it is important to note that they do not reflect the opinions and views of the Pima County attorney, whose opinion is entitled to and should be given the same, if not more, deference than that of her co-defendants. That's it. Thank you very much. Ms. Krebs, you have 3 minutes and 30 seconds. Thank you, Your Honor. I also probably won't use all of that time. But I would like to go back to the Court's discussion with the State regarding its suggestion that, in effect, every woman seeking a previability abortion now be required to come to court and seek judicial agreement. They didn't say every woman seeking a previability abortion. They said in the case of a woman who discovered a birth defect that could not be discovered until after 20 weeks, but before viability, could come to court in order to do an as-applied challenge. Yes. Taking it, though, a step back, Your Honor, and I didn't mean to misstate what they were, how they had framed it, but under their view as to whether this case can be maintained as a facial or as-applied challenge, the only way that any woman could obtain a previability abortion would be to go to court and ask the judge to allow her to do that. No, no. Most previability abortions, the overwhelming percentage of them before 20 weeks. I'm sorry. Previability abortions, a previability abortion that would otherwise be prohibited by the Act. After 20 weeks. I mean a post-20-week previability. Exactly. I'm sorry. I've started abbreviating at this point. That suggestion that women would have to vindicate their rights one on one, one at a time in court, really harkens back to what the Supreme Court rejected in the Doe v. Bolton case, which was that women would have to have their abortions approved by a hospital committee. In effect, that is what the State is suggesting here, that women seeking previability abortions at or after 20 weeks vindicate their rights one on one. That whole question turns, doesn't it, on whether one agrees with your basic proposition, which is that all these women have a right to abortion without any facts, and therefore there's no reason for any facts or any reviews or any court consideration. I mean, his premise is that that isn't true, and that he was just positing, as I understand it, that there may be some extreme cases in which you could come in, but that nobody could come in and say, I want an abortion in 22 weeks because I want one. Your proposition is that somebody could come in and say, I want an abortion in 22 weeks because I want one. My statement is that this is a properly raised, as-applied challenge brought by physicians on behalf of themselves and their patients, and that there's absolutely no reason for any woman to have to come to court as an individual to seek to vindicate her rights. But even if it were a facial challenge, you would still say the same thing, right? That's correct. We would prevail under a facial challenge because we clearly meet the large fraction test, which is that for every woman for whom this actually affects their ability Your position is that Arizona can't even prohibit an abortion of a 22-week-old fetus because the woman has changed boyfriends and has changed her mind about whether to carry the baby to term. Is that correct? Yes, Your Honor. It's correct that prior to the point of viability under binding Supreme Court precedent, up until the point of viability, it is the woman's decision as to whether or not to is that the State does not get to decide which women get to exercise their rights, whether it's a majority of women, whether it's women that the State believes have a good reason to exercise their rights. For example, if they have a medical emergency, that's not up to the State. Each individual woman, based on her autonomy and liberty interest, is entitled to make that decision up to the point of viability, and the State cannot intrude into those decisions before that point. Okay. Thank you very much. Thank to all of you for helpful arguments in a difficult case. I 16 v. Horn is submitted, and we are in recess. Thank you.
judges: Schroeder, Kleinfeld, Berzon, Cjj